UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| WILLIAM FRANCIS ELLWOOD, individually, and on behalf of all others similarly situated, | NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY DEMAND** |
| INFINITY HOME LENDING, LLC, a Michigan company, | |
| Defendant. | |

Plaintiff William Francis Ellwood ("Plaintiff" or "Ellwood") brings this Class Action Complaint and Demand for Jury Trial against Defendant Infinity Home Lending, LLC ("Defendant" or "Infinity" or "IHL") to stop the Defendant from violating the Telephone Consumer Protection Act by placing telemarketing calls *without consent* to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff Ellwood, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1.     Plaintiff William Francis Ellwood is a resident of San Bernardino, California.

2.     Defendant Infinity is a Michigan registered company headquartered in Pontiac, Michigan. Defendant Infinity conducts business throughout this District, Michigan, and the US.

**JURISDICTION AND VENUE**

3.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.     This Court has personal jurisdiction over the Defendant since the Defendant has its headquarters in this District, and the Venue is proper because a substantial part of the conduct giving rise to this action was directed towards the Plaintiff by the Defendant from this District.

## INTRODUCTION

5.     As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12.     According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in June 2021 alone, at a rate of 148 million calls per day. www.robocallindex.com (last visited July 7, 2021).

13.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

### COMMON ALLEGATIONS

16.     Defendant Infinity sells home loans to consumers.[3]

17.     Defendant Infinity engages in telemarketing to solicit business from consumers who have never provided consent to Defendant Infinity to be called.

18.     In cold calling the consumers, Defendant Infinity is placing multiple unsolicited telemarketing calls to phone numbers that are registered on the National DNC, such as Plaintiff's phone number.

19.     Defendant Infinity advertises to hire full time paid employees for the role "Telemarketing Sales" whose primary duties include making calls to consumers. They also train their sales representatives for 60-90 days.[4]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/infinity-home-lending/about/
[4] https://www.wayup.com/i-j-Infinity-Home-Lending-LLC-226467187625668/

3

20.     Several aggrieved consumers have posted complaints about receiving unwanted solicitation calls from Defendant Infinity, including calls to phone numbers registered on the National DNC, like Plaintiff Ellwood. For example:

- "Harassment every single day. Rude caller named Samuel Gabriel hung up on me after begging us to be a customer. You don't treat customers poorly or it will reflect business!!!Yes, it's your company so quit denying this management!"[5]

- "I would never do business with this company. Someone called me after 9pm. I told the person I'm with another lending company and not to call me back. The person called right back and loud talked me. This company has called me about 10 times!!! I would never do business with a company so desperate!!! VERY IRRITATING!!!"[6]

- "This company apparently has a ton of phishing telemarketers trying to solicit business. My company gets 12-20 phone calls a day from them and EVERY single time I try and have our phone number removed, ridiculous"[7]

- "company is using an outdated phone list, and is calling people on the Federal do not call list."[8]

- "I received a call from Infinity Home Lending. Receiving cold calls to refinance my current mortgage had been an ongoing annoyance which typically resulted in declining to entertain the conversation with the caller…"[9]

21.     In response to these unwanted calls, Plaintiff Ellwood files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF ELLWOOD'S ALLEGATIONS

22.     Plaintiff Ellwood registered his phone number on the DNC on August 13, 2013.

---

[5] https://www.google.com/search?q=%22infinity+home+lending%22#lrd=0x8824bf67ac6b9f6b:0x83e525b18e7be6d0,1,,,

[6] *Id.*

[7] *Id.*

[8] https://www.bbb.org/us/mi/pontiac/profile/mortgage-broker/infinity-home-lending-0332-90035945/customer-reviews

[9] *Id.*

23.     Plaintiff Ellwood's phone number is not associated with a business and is used for personal use only.

24.     Starting on April 28, 2021, Plaintiff Ellwood began getting calls from the phone number 909-247-1458.

25.     Plaintiff received phone calls from the above number to his phone number on the following dates and times:

       a.  On April 28, 2021, at 12:10 PM and 3:20 PM.

       b.  On April 29, 2021, at 9:39 AM, 1:04 PM and 3:41 PM.

       c.  On April 30, 2021, at 11:01 AM.

       d.  On May 1, 2021, at 9:31 AM, and

       e.  On May 3, 2021, at 9:36 AM, 11:51 AM and 1:21 PM.

26.     On May 3, at 2:45 PM Plaintiff received another call from the same phone number, 909-247-1458. Plaintiff answered this call and spoke to an agent who identified herself as Reilly, an agent who worked for the Defendant Infinity Home Lending and solicited Plaintiff for a home loan product.

27.     The unwanted calls that Plaintiff received from Defendant Infinity, as alleged herein, have harmed Plaintiff Ellwood in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

28.     Seeking redress for these injuries, Plaintiff Ellwood, on behalf of himself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited text messages to telephone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

29.     Plaintiff Ellwood brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

30.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Ellwood anticipates the need to amend the Class definitions following appropriate discovery.

31.     **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

32.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)     whether Defendant Infinity placed multiple calls to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining consent to place those calls;

(b)     whether Defendant Infinity's calls to Plaintiff and other consumers were made for telemarketing purposes;

(c)     whether Defendant's conduct constitutes a violation of the TCPA; and

(d)     whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

6

33.     **Adequate Representation**: Plaintiff Ellwood will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Ellwood has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Ellwood and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Ellwood nor his counsel have any interest adverse to the Class.

34.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Ellwood. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Registry Class)**

35.     Plaintiff Ellwood repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference.

36.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who

do not wish to receive telephone solicitations that is maintained by the federal government."

37.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

38.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

39.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one text message in a 12-month period sent by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

40.     As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

41.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ellwood, individually and on behalf of the Class, prays for the following relief:

a)     An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Ellwood as the representative of the Class; and appointing his attorneys as Class Counsel;

b)     An award of actual and/or statutory damages and costs;

c)      An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)      An injunction requiring Defendant to cease all unsolicited calling/texting activity,

and to otherwise protect the interests of the Class; and

e)      Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ellwood requests a jury trial.

Respectfully Submitted,

**WILLIAM FRANCIS ELLWOOD**, individually and on behalf of all those similarly situated individuals,

DATED this 7th day of July, 2021.

By: /s/ *Stefan Coleman*
Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*